UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WILLIAM G. COLDWATE,

    Plaintiff,

    v.

ALCATEL-LUCENT USA, INC.,

    Defendant.

No. 10-CV-4918
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

1. INTRODUCTION

I have before me Plaintiff's motion to reconsider my October 18, 2012 order granting summary judgment to Defendant. Plaintiff raises two grounds for reconsideration. First, he argues that I overlooked his claim that he had a "disability" within the meaning of the ADA because he had a record of a physical or mental impairment that substantially limits one or more of his major life activities. 42 U.S.C. § 12102(1)(B). Second, he argues that I failed to recognize the distinction between a "class of jobs" and a "broad range of jobs" as defined under the 2008 Code of Federal Regulations, and that this led to an erroneous finding that Plaintiff was not "regarded as" being disabled by Defendant. 29 C.F.R. 1630.2(j)(3)(ii)(B) and (C) (2008).

Plaintiff is correct that I did not adequately consider these arguments. On July 10, 2012, Plaintiff filed a Motion to Amend/Correct pleadings to include a "record of" disability theory as to why Plaintiff met the ADA's definition of disability. I granted that motion on July 16, 2012. However, in considering Defendant's motion for summary judgment, I overlooked the "record of" disability theory and ruled only on the "regarded as" theory.

Plaintiff is also correct that the definition of "substantially limits" contained in the 2008

1

Code of Federal Regulations, which were in effect at the time Plaintiff's cause of action arose, distinguishes between "class of jobs" and "broad range of jobs." Specifically, 29 C.F.R. 1630.2(j)(ii)(b) defines "class of jobs" as "[t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment." Conversely, 29 C.F.R. 1630.2(j)(ii)(C) defines "broad range of jobs" as "[t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs *not* utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment." (emphasis added). The two provisions constitute independent grounds for a finding that physical or mental impairment substantially limits one or more major life activities. In my October 18, 2012 order, however, I did not make clear findings as to both provisions.

My analysis of Plaintiff's "record of" theory of disability and "class of jobs" argument is laid out below. I find that Plaintiff 1) has raised a genuine issue of material fact as to whether Defendant regarded him as disabled; 2) cannot show that he could perform the essential functions of his job without reasonable accommodation; and 3) had not adequately briefed the issue of possible reasonable accommodations. I withdraw the entry of summary judgment for Defendant and order further briefing from both sides on whether Plaintiff could have performed the essential functions of his job with a reasonable accommodation.

2. ANALYSIS

To make a prima facie showing of disability discrimination under the ADA, Plaintiff must demonstrate that he is (1) disabled within the meaning of the ADA, (2) qualified to perform the essential functions of the job either with or without accommodation and (3) he suffered an

adverse employment action because of his disability. *Moore v. J.B. Hunt Transport, Inc.*, 221 F.3d 944, 950 (7th Cir. 2000).

1. Disabilty

Under the ADA, "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (2008). Working is a "major life activity" under the ADA. 29 C.F.R. 1630.2(i)(1)(i) (2008). A physical or mental impairment "substantially limits" an individual's ability to work if it "significantly restrict[s] . . . [his] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. 1630.2(j)(3)(i) (2008). The 2008 Code of Federal Regulations explained the distinction between "class of jobs" and "broad range of jobs" as follows:

> **[Class of Jobs]**: The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment;
>
> **[Broad Range of Jobs]**: The job from which the individual has been disqualified because of an impairment, and the number and types of jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment;

29 C.F.R. 1630.2(j)(ii)(B) and (C) (2008). Notably, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. 1630.2(j)(3)(i) (2008).

I first turn to Plaintiff's claim that he is "disabled" within the meaning of the ADA based on his record of having an impairment that substantially limits one or more of his major life activities. Assuming that Plaintiff's medical history qualifies as a record of disability under the

ADA, Plaintiff has put forth no evidence to demonstrate that he was terminated "because of" this record. 42 U.S.C. § 12112. The evidence suggests that Plaintiff was terminated only because of Defendant's belief that he was unable to perform the essential functions of the MFM position. This has nothing to do with his history of mental or physical impairments, *see* 29 C.F.R. 1630(2)(k)—it concerns only the impairments he had (or, more accurately, the impairments Defendant believed he had) at the time of his termination. Plaintiff himself admits that if he "did not have the restrictions [imposed by Dr. Pearah] that he had after he came back from the injury, he would still be working at ALU." Pl.'s 56.1(b)(3)(C) SOF, ¶ 3. But Dr. Pearah's restrictions were based on the results of Plaintiff's FCE and his own estimation of Plaintiff's long-term right shoulder capacity, not on Plaintiff's record of past medical problems.[1] The "record of" theory of disability fails.

I next turn to Plaintiff's "regarded as" theory for establishing disability. Here, my previous finding that there is no genuine factual dispute that Defendant did not regard Plaintiff as being substantially limited in his ability to perform a broad range of jobs stands. I now consider whether there is a genuine factual dispute over whether Defendant regarded Plaintiff as being substantially limited in his ability to perform a class of jobs.

I am willing to accept Plaintiff's proposition that, based on common training, knowledge and skills, the MFM position could be considered as falling under a general class of "sheet metal work," *see generally DePaoli v. Abbott Labs*, 140 F.3d 668, 673 (7th Cir. 1998). The question, then, is whether Plaintiff has put forth adequate evidence for a reasonable jury to find that Defendant regarded Plaintiff's limitations as extending beyond his specific job as an MFM to disqualify him from other jobs within the sheet metal work class of jobs. There is evidence that

---

[1] There is evidence that Plaintiff's record of past health problems prompted Coleman to request the FCE, but that is not relevant.

cuts both ways on this. On the one hand, Coleman testified that he believed Plaintiff could, with his physical restrictions, fill supervisory or programming positions in the sheet metal industry with minimal to no additional training necessary. Coleman Dep. at 245:9-251:24. But Coleman also testified he believed Plaintiff's restrictions could preclude him from working as a wiring mechanic and a toolmaker, two positions that appear to fall within the class of sheet metal work. *Id*. at 252:17-254:12. Given the relatively low evidentiary threshold that pertains here, *see e.g. Best v. Shell Oil Co.*, 107 F.3d 544, 548 (7th Cir. 1997), I believe Plaintiff has demonstrated the existence of a genuine fact dispute over whether Defendant regarded him as substantially limited in his ability to perform other jobs within the sheet metal class, and thus "disabled" within the meaning of the ADA.[2]

2. Qualified Individual

Plaintiff must next show the he was a "qualified" individual with a disability, meaning he could perform the essential functions of the job either with or without reasonable accommodation. *See* 42 U.S.C. § 12112(a); 42 U.S.C. § 12111(8). Courts generally rely on the employer's judgment in describing the essential functions of the job, and do not second-guess that judgment so long as the employer requires all employees in a particular position to perform the allegedly essential functions. *See DePaoli v. Abbott Laboratories*, 140 F.3d 668, 674 (7th Cir. 1997); 42 U.S.C. § 12111(8) (consideration should be given to employer's judgment as to

---

[2] In my October 18, 2012 order I stated, citing *Hanson v. Caterpillar*, 688 F.3d 816, 820 (7th Cir. 2012) that "Coleman's speculation at his deposition about Plaintiff's ability to perform other jobs is not probative of ALU's subjective beliefs at the time of Plaintiff's termination." Dkt. Entry 113 at p. 14. Upon closer look, I believe that Coleman's deposition testimony is in fact probative. Coleman's testimony is distinguishable from the deposition testimony at issue in *Hanson* on two grounds. First, Coleman's testimony is wholly *inside* of the complaint—it cuts straight to Plaintiff's claim that he was fired for being regarded as disabled, not any subsequent discrimination in rehiring as in *Hanson*. Second, the record indicates that, as Plaintiff's supervisor, Coleman made the determination on behalf of Defendant as to whether Plaintiff's impairment disqualified him from certain jobs. *See* Def. 56.1(a)(3) at ¶ 40 ("In general, once Health Services has determined what, if any, restrictions an employee should have, it is then up to the employee's supervisors to determine whether they can accommodate the employee's restrictions."). Thus, Coleman's opinion is highly probative of whether Defendant believed Plaintiff's physical restrictions disqualified him from other jobs within the sheet metal work class.

what functions of a job are essential).

As stated in my October 18, 2012 order, the record indicates that Defendant's decision to terminate Plaintiff was based on its belief that his physical restrictions prevented him from operating certain machinery essential to the MFM position, including the Amada Press Brake, the Amada Punch Press, the Manual Arbor Press and the Drill Press. Plaintiff agrees that operation of all these machines are essential elements of the MFM position. Coldwate Dep. at 60:2-16. Plaintiff also agrees with the description of requirements for operating these machines as given in the Harringer Report, with the possible exception that he was not able to "guess at the percentages of time" spent on each machine. *Id*. at 62:2-64:21.

Based on this record, no reasonable jury could find that Plaintiff can perform the essential functions of the MFM position without accommodation. At the very least, it is clear he is not able to operate the Amada Press Brake machine, which the Harringer report lists as a primary job function accounting for 50% of Plaintiff's time on the job. The record indicates the Amada Press Brake requires frequent above shoulder-height lifting of punches and dies that weigh between 20-50 pounds each.[3] However, the results of Plaintiff's FCE indicate that, using both hands, he is unable to lift any overhead weight above 15-20 pounds. Plaintiff can point to no countervailing evidence in the record to support that he is able to lift the necessary 20-50 pounds of overhead weight.[4] Based on the Amada Press Brake machine's central role in the essential

---

[3] Plaintiff has offered no evidence that Defendant has overstated the amount of time that use of this machine encompasses. Therefore, I adopt Defendant's description of the essential functions of the MFM position in its entirety. *Basith v. Cook County*, 241 F.3d 919, 928-29 (7th Cir. 2001).

[4] Plaintiff asserts that Dr. Watt's May 6, 2008, and Dr. McGivney's June 12, 2008 notes stating that Plaintiff could return to work with no restrictions and Mr. Erikson's statement in the "Summary and Recommendation" section of the initial FCE report that Plaintiff "safely demonstrated physical capabilities at his required physical demand level" raise a genuine fact dispute over whether Plaintiff could perform the essential functions of his job. I disagree. Neither Dr. Watt's nor Dr. McGivney's notes contain specific findings as to the essential functions of Plaintiff's job (Dr. McGivney apparently refused to perform an FCE himself). As for Mr. Erikson's statement in the July 1, 2008 FCE report, it was very clearly based on an erroneous belief that Plaintiff's job did not require overhead lifting (which apparently stemmed from Plaintiff's false portrayal of his job requirements, which he very well could have repeated to Dr. Watt and Dr. McGivney). Erikson adjusted his recommendations in the August 1, 2008 report, finding that Plaintiff demonstrated physical abilities to operate the drill press or arbor press but was limited with

6

functions of the MFM position, I find that his inability to operate it renders him unqualified under the ADA, even if he can safely operate all other necessary machinery. *See Miller v. Illinois Dep't of Corrections*, 107 F.3d 483, 485 (7th Cir. 1997) ("if an employer has a legitimate reason for specifying multiple duties for a particular job classification, duties the occupant of the position is expected to rotate through, a disabled employee will not be qualified for the position unless he can perform enough of these duties to enable a judgment that he can perform its essential duties.").

So the question is whether Plaintiff could have performed the essential functions of his job with a reasonable accommodation. This inquiry is made a great deal more complicated by the fact that Plaintiff does not propose any reasonable accommodations himself. However, there is some evidence in the record that certain accommodations were possible. For example, the Harringer Report states that in operating the Amada Press Brake machine, Plaintiff could "avoid above-the-shoulder moves" if he "remain[ed] standing at all times, and in some cases be provided a footstep to reach the controls, or the piece part." The report goes on to state that "From a safety perspective, operating the press brake from a step-stool, or ladder would not be recommended." The record is full of conclusory statements to this effect but I do not have any hard evidence from either side by which I can assess the reasonability of possible accommodations. Plaintiff needs to propose specific accommodations, and Defendant needs to present evidence as to why these proposals would not be safe or are otherwise unreasonable. I am ordering further briefing from both sides on this issue.

    3. Whether Plaintiff Suffered an Adverse Employment Action "because of" His Disability

I next turn to the third prong of the ADA prima facie showing: whether Plaintiff can show

---

overhead lifting to no more than 15-20 pounds. No reasonable jury could rely on these cryptic notes and Mr. Erikson's initial mistaken statement over the detailed FCE results.

that he suffered an adverse employment action because of his disability. The briefing from both parties on this issue is utterly confused; I take a moment to clarify the legal standards. As explained by the Seventh Circuit:

> "Discrimination" as used in the ADA encompasses two distinct types of discrimination. First, it means treating "a qualified individual with a disability" differently because of the disability, i.e., disparate treatment. A disparate treatment claim under the ADA-like disparate treatment claims brought under other federal anti-discrimination statutes-may be proved either directly, or indirectly using the *McDonnell Douglas* burden-shifting method. Additionally, because the ADA defines discrimination in part as "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual ...,"42 U.S.C. § 12112(b)(5)(A), a separate claim of discrimination can be stated under the ADA for failing to provide a reasonable accommodation.

*Sieberns v. Wal-Mart Stores, Inc*, 125 F.3d 1019, 1021-22 (7th Cir. 1997). In this case, Defendant does not dispute that Plaintiff was terminated because of his physical impairment—the record is replete with direct evidence. It is therefore unnecessary to present circumstantial evidence, or to prove it indirectly using the *McDonnell Douglas* burden-shifting analysis. *See Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 574 (7th Cir. 2001) ("It would be redundant to require a plaintiff to utilize the burden-shifting method to raise a presumption of discrimination if he or she possesses direct evidence of discrimination."). The trick is, under the ADA, adverse employment action based on a physical or mental impairment constitutes discrimination only when it is against "a qualified individual with a disability." *Id*. at 1022. Because Defendant does not dispute that Plaintiff was fired "because of" his impairment[5], this prong will *automatically* be met if Plaintiff can show that the impairment (or perceived impairment) meets the ADA's definition of "disability" and that Plaintiff was a qualified individual. 42 U.S.C. § 12112.

---

[5] Because Defendant has not offered any non-impairment based reason for terminating Plaintiff, its argument that Plaintiff cannot demonstrate pretext, and is thereby precluded from raising a genuine fact dispute over discrimination, is entirely inapt.

8

The ADA differs from Title VII and other federal civil rights statutes in that it recognizes that the protected trait (disability) may legitimately impair an individual's ability to perform his or her job (unlike race, religion, gender, nationality, etc). This, in turn, may alter the manner in which discriminatory intent manifests itself. The ADA is designed to combat not only knowing, purposeful discrimination (i.e. Employer: "I know the disabled individual is equally capable as my non-disabled employees when it comes to performing job Y but I do not like being around people with disability X") but also common misconceptions and generalizations associated with an individual's disability (i.e. Employer: "I have no problem with people that have disability X but everyone knows they cannot do job Y"). *See Hoffman*, 256 F.3d at 573 ("the ADA recognizes that a non-disabled person's instincts about the capabilities of a disabled person are often likely to be incorrect").

In other words, an honest but mistaken belief that a disabled individual is not qualified for a position still constitutes "discrimination" under the ADA if, as a result of the misconception, the employer engages in disparate treatment or refuses to make reasonable accommodations. But such misconceptions are by definition unknowing (at least to some extent) acts of discrimination, so the evidentiary problems associated with, for example, race discrimination cases, where employers tend to carefully conceal their motives, are not always present. In "honest mistake" cases, the defendant has, wittingly or unwittingly, admitted to discrimination so long as the plaintiff can show that he was a qualified individual with a disability. I think that is the source of the confusion here.

III.   CONCLUSION

For the foregoing reasons, Plaintiff's motion to reconsider is GRANTED in part.

9

Plaintiff is ordered to submit briefing on proposed reasonable accommodations that Defendant could have made by February 28, 2012. Defendant is ordered to respond by March 21, 2012. Plaintiff may file a reply, if he wishes, by April 4, 2012. This opinion is hereby incorporated with my October 18, 2012 opinion and order.

ENTER:

James B. Zagel
United States District Judge

DATE: January 25, 2013